**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**



| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **Adam@SanitizingHeroes.com** THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, LLC | Case No. 3:20sw367 **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Kelly Foti, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Google, LLC, an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been so employed by the FBI since January 2020. I am currently assigned to the Richmond Field Office located in Richmond, Virginia. I am assigned to a complex

financial crimes squad, and in the course of my duties I am designated to investigate white collar crimes, and more specifically, those violations that are related to federal fraud offenses. As part of my duties, I have received training regarding the investigation of various federal crimes including, but not limited to, complex financial crimes and health care fraud. By virtue of my FBI employment, I performed and have performed a variety of investigative tasks. As a Special Agent, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (wire fraud) have been committed by ADAM R. NEAL ("NEAL"). There is also probable cause to search the information described in Attachment A for evidence of these crimes, further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### A. General Scheme to Defraud

6. ADAM R. NEAL ("NEAL") is the self-described CEO and "corporate officer" of "Sanitizing Heroes, Inc.," a "Medical Supply Distribution" business that purports to provide various types of personal protective equipment ("PPE") for government and health care workers tasked with confronting the COVID-19 virus. Sanitizing Heroes, Inc. is purportedly located at 9962 Brook Road in Glen Allen, Virginia, which your affiant has confirmed is the physical address of a UPS Store.

7. NEAL's business maintains a website, https://gloveheroes.com/index.html, which advertises PPE items such as personal protection coveralls, powder free nitrile gloves, 3Ply surgical masks, 3M 1860 medical masks and KN95 medical masks. The website claims that Sanitizing Heroes is "on a mission" to "ensur[e] the availability of PPE equipment for those facing COVID 19;" and that Sanitizing Heroes has "establish[ed] a global supply chain," and is "equipped to supply the globe . . . keeping the supply chain flowing, we provide medical equipment for hospitals, the local, state, and the federal government."

8. NEAL's website has a "Place Your Order" portal, on which customers can place orders for PPE. For contact information, potential buyers are directed to a Richmond-area telephone number, and the email address Adam@SanitizingHeroes.com, the SUBJECT EMAIL ADDRESS. The SUBJECT EMAIL ADDRESS is also listed along the banner of each of the website's various pages.

9. Investigation has revealed that NEAL incorporated Sanitizing Heroes with the Virginia State Corporation Commission on May 3, 2020. The Sanitizing Heroes business website, https://gloveheroes.com/index.html, was created on July 31, 2020.

3

10. Between July 4, 2020 and July 11, 2020, NEAL and Sanitizing Heroes attempted to conduct two separate transactions with two separate PPE brokers, BROKER 1 and a Confidential Informant ("CI").

11. The CI (a broker of medical PPE based in Saint Louis, Missouri) provided the FBI with a "Purchase Order" packet that NEAL had sent to the CI's company via the WhatsApp messaging application. The Purchase Order bears NEAL's signature block and signature. This packet includes a "Letter of Intent" dated July 4, 2020; purported bank statements from BB&T and Chase Bank; the "Purchase Order;" and a "Letter of Attestation." These various items are described more fully below:

12. The "Letter of Intent" claimed that NEAL's business, Sanitizing Heroes, wished to place an order for 50 million boxes of "Nitrile Examination Gloves." The letter assured the potential seller that there were "[p]roof of funds for $2,000,000,000.00 (Two Billion USD) included at the bottom of this file." This "proof of funds" consists of the aforementioned Letter of Attestation.

13. That Letter of Attestation, dated July 1, 2020, has been purportedly drafted and signed by attorney Daniel J. King, of Westlake, California, and titled "RE: PURCHASE OF MEDICAL GLOVES." In the letter, Mr. King describes himself as being "involved in the vetting process for persons and/or entities desiring to purchase very substantial quantities of Medical Gloves, as well as additional personal protective equipment used in and for the medical industry." Mr. King's letter of attestation continues to note that "my client, Minerals Rare, a Texas Corporation, has at its disposal, sufficient funds to complete the purchase of a quantity of One Billion Medical Gloves . . . as of this date, I have been shown sufficient amounts to fund over $2,000,000,000.00 of purchasing, with more funds coming in."

14. According to the State Bar of California, Mr. King is in fact a real estate and business law attorney practicing in Westlake, California. When contacted by the CI, Mr. King explained that he had not drafted the letter in question, and that he was not familiar with NEAL or Sanitizing Heroes, Inc.

15. The "Purchase Order," drafted on Sanitizing Heroes Inc. letterhead, directs the shipment of the 50 million boxes of gloves (for a total purchase price of $582,000,000.00) to Sanitizing Heroes' locations at the Los Angeles International Airport and the Port of Los Angeles. The Purchase Order letterhead includes NEAL's business contact information, to include the SUBJECT EMAIL ADDRESS. The Purchase Order form appears to be digitally signed by NEAL, using an electronic "Docu-Sign" application.

16. The bank statements that NEAL attached to the Purchase Order packet consisted of the following:

   a. A one-page document that purports to be an account statement dated June 30, 2020 from Chase Bank for "Sanitizing Heroes Inc.," listing (1) a checking account (last four digits -2408) that contains an available balance of $99,773,120.00; and (2) a savings account (last four digits -5694) that contains an available balance of $52,750,000.00.

   b. A one-page document that purports to be an account statement dated June 30, 2020 for a BB&T Corporate Checking account in the name of "Sanitizing Heroes Inc." The account statement lists a current balance of $112,174,252.00. It is not clear what the account number for this checking account is.

17. Even very cursory scrutiny of these two purported bank statements makes clear that both documents have been crudely and obviously altered, with portions of mismatched text;

spelling errors; discrepancies in the size of side-by-side text and numbers; and areas where lines of text and figures have been clearly superimposed over the original text of the document. Investigators have subpoenaed Chase Bank and BB&T Bank for all accounts associated with NEAL and Sanitizing Heroes, Inc. (to include the account numbers described above).

18. Chase Bank provided the requested information on November 16, 2020, which demonstrated that Sanitizing Heroes has ten (10) bank accounts with Chase Bank, each of which list NEAL as the President of that organization. Of those 10 accounts, the two accounts referenced in Paragraph 16(a) (that is, accounts ending in –2408 and –5694) were both opened on May 30, 2020. Those two accounts were opened using NEAL's Social Security Number, and their respective signature cards have been electronically signed by NEAL. The actual account activity in those two accounts is starkly different than that reflected in the account statements provided by NEAL in the aforementioned "Purchase Packet." Specifically,

   a. The Sanitizing Heroes checking account (–2408) – which purportedly contained an available balance of $99,773,120.00 in the Purchase Packet materials – instead contained an <u>actual</u> ending balance of $872.11 on June 30, 2020, and an <u>actual</u> ending balance of $423.45 on July 31, 2020. Throughout the entirety of June and July of 2020, the checking account's balance never exceeded $6,377.69.

   b. The Sanitizing Heroes savings account (–5694) – which purportedly contained an available balance of $52,750,000.00 on June 30, 2020 in the Purchase Packet materials – instead contained an <u>actual</u> ending balance of $0.00 on June 30, 2020, and an <u>actual</u> ending balance of $10.00 on July 31, 2020. Throughout the entirety of June and July, the savings account's balance never exceeded $100.

19. NEAL's other eight accounts at Chase Bank were opened on either September 17

or August 19 of 2020; according to subpoena returns from Chase Bank provided on November 16, the total account activity within those eight accounts, for the entirety of September and October of 2020, amounted to less than $50,000. As of October 31, the eight accounts contain an aggregate ending balance of $645.43.

20. The CI also provided to the FBI a second Purchase Order packet, which appears to have been used by NEAL in another attempt to procure a large quantity of medical gloves. NEAL initiated this second attempted transaction with BROKER 1, who subsequently provided NEAL's Purchase Order Packet to the CI's Company. BROKER 1 is headquartered in Utah, with offices in Naples, Florida. This Purchase Order packet also includes a "Letter of Intent" (dated July 5, 2020); the same two fraudulent bank statements from BB&T and Chase Bank that accompanied the first Purchase Order packet (with very minor alterations); and the same "Purchase Order" that NEAL had utilized in the first packet.

21. In this "Letter of Intent," NEAL explained to BROKER 1 that NEAL's business, Sanitizing Heroes, wished to place an order for 60 million boxes of "Nitrile Examination Gloves." NEAL's letter states that the best way to contact NEAL is at the SUBJECT EMAIL ADDRESS. The letter advises BROKER 1 that "the signer of the contract who is legally able to pay is Adam R. Neal, [SUBJECT EMAIL ADDRESS]." This letter appears to be digitally signed by NEAL, using the electronic "Docu-sign" application.

22. This second Packet also included the same corresponding "Purchase Order," drafted on Sanitizing Heroes, Inc. letterhead. The Purchase Order directs the shipment of these 60 million boxes of gloves (for a total purchase price of $582,000,000.00) to Sanitizing Heroes' locations at the Los Angeles International Airport and the Port of Los Angeles. The letterhead includes NEAL's business contact information, including the SUBJECT EMAIL ADDRESS.

7

NEAL appears to have signed the Purchase Order using the "Docu-Sign" application.

**B. Conclusion**

23. The government's investigation indicates that NEAL has provided clearly fraudulent documentation to brokers of PPE supplies in an effort to obtain massive quantities of medical personal protective equipment; and that NEAL's business, Sanitizing Heroes, Inc., is a sham entity that is currently engaged in the fraudulent solicitation of high-dollar orders for supplies of medical PPE that NEAL neither physically possesses, nor has possession of or access to the type of funds necessary to legitimately obtain those items.

24. In the course of executing this scheme to defraud, NEAL utilizes the SUBJECT EMAIL ADDRESS as his primary point of contact with potential customers on the Sanitizing Heroes, Inc. website. NEAL has also provided purchase orders, and (purported) documentation of Sanitizing Heroes' financial solvency, to at least one PPE supplier, directing communications about the proposed transaction to the SUBJECT EMAIL ADDRESS.

25. Your affiant has previously provided Google with a preservation request for the SUBJECT EMAIL ACCOUNT on November 3, 2020. In general, an e-mail that is sent to a Gmail account subscriber is stored in the subscriber's "mail box" on Google servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google's servers for a certain period of time.

## BACKGROUND CONCERNING E-MAIL

26. In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("e-mail") access, to the public. Google allows subscribers to obtain e-mail accounts at the domain gmail.com, like the e-mail accounts listed in Attachment

A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

27. A Google subscriber can also store with the provider files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

28. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

29. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records

9

of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

30. In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CONCLUSION

31. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, LLC, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Kelly Foti
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on November 25, 2020.

/s/

Elizabeth W. Hanes
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **Adam@SanitizingHeroes.com** that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on November 3, 2020, the Provider is required to disclose the following information, occurring after **March 1, 2020**, to the government for each account or identifier listed in Attachment A:

a. The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. §§ 1343 involving **ADAM R. NEAL** and **Sanitizing Heroes, Inc.**, occurring after **March 1, 2020**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Information and correspondence relating to ADAM R. NEAL and Sanitizing Heroes, Inc., or any other company created by or at least partially controlled by ADAM R. NEAL;

b. Information and correspondence relating to ADAM R. NEAL's and Sanitizing Heroes, Inc.'s interactions with potential and current business partners and/or customers;

c. Information and correspondence related to ADAM R. NEAL's relationship with and control of Sanitizing Heroes, Inc.;

d. Information and correspondence involving any individual employee or associate of Sanitizing Heroes, Inc., as relates to that individual's or associate's actions on behalf of or while employed by either ADAM R. NEAL or Sanitizing Heroes, Inc.;

e. Information and correspondence relating to the solicitation, sale, purchase, or transfer of medical PPE or related products;

f. Information related to the shipping, storage, or maintenance of PPE supplies or related equipment, to include correspondence and business records involving office facilities, warehouse spaces, port access and storage space, and airport access and storage space;

g. Information and correspondence relating to ADAM R. NEAL's and/or Sanitizing Heroes, Inc.'s financial accounts, holdings, investments, or dealings;

h. Information and correspondence relating to ADAM R. NEAL's and Sanitizing Heroes, Inc.'s relationships or business dealings with any health care facility or local, state, or federal government employee or program;

i. Information relating to who created, used, or communicated with the SUBJECT EMAIL ACOUNT, including records about their identities and whereabouts; and

j. Information evidencing the state of mind, as relates to the crimes under investigation, of ADAM R. NEAL and any other individual, known or unknown, associated with either ADAM R. NEAL or Sanitizing Heroes, Inc.

**III.  Filter Team Protocols**

If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of government attorneys and agents is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will review all seized communications and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team and the investigative team may resume its review. If the filter team decides that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party or the crime-fraud exception applies), the filter team must obtain a court order before providing these attorney communications to the investigative team. This investigation is presently covert and the government believes that the subject of the search is not aware of this warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google, and my official title is _____. I am a custodian of records for Google. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Google; and

    c.    such records were made by Google as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date                                Signature